UNITED STATES

v.

**Sergeant Billy D. MYERS, FR 459–19–4110 United States Air Force.**

**ACM 23364.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 5 Nov. 1981.

Decided 2 July 1982.

Appellate Counsel for the Accused: Colonel George R. Stevens and Major Richard A. Morgan.

Appellate Counsel for the United States: Colonel James P. Porter and Captain Richard O. Ely, II.

Before HODGSON, POWELL and MILLER, Appellate Military Judges.

DECISION

HODGSON, Chief Judge:

Contrary to his pleas, the accused was convicted of wrongfully transferring and possessing marijuana, with intent to distribute, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934.[1]

---

1. He was acquitted of an additional allegation of wrongfully transferring marijuana.

The approved sentence extends to a bad conduct discharge, confinement at hard labor for six months, forfeiture of $300.00 per month for six months, and reduction to airman basic.

I

The accused contends the Jencks Act [2] requires he be provided with a witness' initial handwritten statement prior to cross-examination. In his view, the Government's inability to furnish him this statement obligated the military judge to strike that witness' testimony and to declare a mistrial. We disagree.

Airman Shea was a crucial witness as to the marijuana transfer allegation of 14 May 1981. On that date he gave a written statement to Special Agent Zayas, Office of Special Investigation (OSI). The written statement was typed and given to the accused. Although written statements are usually retained, this one was lost or misplaced.

Shea testified the typed statement was "basically the same thing" as his written statement although it had been "changed around a little, reworded." He did not compare the two statements, and he was not sure if the typed version was exactly like the written one. Zayas stated the statements were identical, and the typed version was accomplished without changes, editorializing, deletions, or omissions. He had no idea what happened to the written statement.

 The Jencks Act applies to courts-martial, *United States v. Dixon*, 7 M.J. 556 (A.C.M.R.1979), and Shea's statement to the OSI is covered by the Act. To be resolved is whether the accused is entitled to *both* the typed statement of the witness and the handwritten statement from which the typed one was accomplished.

The federal courts have held that the Jencks Act imposes no duty on law enforcement officers to retain "rough notes" where they are incorporated in official records. *United States v. Pacheco*, 489 F.2d 554 (5th Cir. 1974); *reh. denied*, 491 F.2d 1272 (5th Cir. 1974); *cert. denied* 421 U.S. 909, 95 S.Ct. 1558, 43 L.Ed.2d 774 (1975); *United States v. Terrell*, 474 F.2d 872 (2d Cir. 1973).

In *United States v. Scott*, 6 M.J. 547 (A.F.C.M.R.1977), we held when an Article 32(b), 10 U.S.C. § 832(b) investigating officer causes statements to be recorded verbatim, the recordings must be retained.

The Navy Court of Military Review, *United States v. Kilmon*, 10 M.J. 543 (N.C. M.R.1980), suppressed a witness' testimony where an outline he had furnished the police had been destroyed.

However, neither of those situations is before us. Here Shea's statement was given to the accused, and there is compelling evidence that the written statement and the typed statement were substantially identical. Shea's statement had not been destroyed as was the case in *Scott* and *Kilmon, supra*, but was available in a different form. Under these circumstances the accused's ability to cross-examine the witness was not impeded. *Terrell, supra*. The military judge was correct in refusing to strike Shea's testimony and to declare a mistrial.

II

As a result of information given them by Special Agent Zayas that the accused had marijuana at his off-base residence and that the marijuana would be transferred at approximately 1800 hours, 29 May 1981, the local police obtained a warrant to search the accused's house on Tarasco Street from a civilian magistrate. The accused, seeing the police arrive, ran into his house. As Patrolman Dawson approached the house to execute the warrant, he concluded it was defective as the address on the warrant was "325 Tarasco" and the house number was "337 Tarasco".[3] He never served the war-

2. 18 U.S.C. § 3500.

3. Patrolman Dawson's conclusion that the search warrant was defective because of an

incorrect address was not a proper concession. There is ample authority that a search is not rendered unlawful because the numbered premises intended to be searched were misdes-

rant or entered the house. Zayas and Patrolman Farley walked, while on adjacent property, to the rear of the building. From approximately 15–20 feet away, Zayas and Farley saw the accused open a rear window and drop a white opaque plastic bag in the backyard of the duplex. Farley jumped over a three foot chain link fence and retrieved the bag. It contained approximately 450–500 "joints" of marijuana.

The accused argues the military judge erred in not suppressing the marijuana seized by Farley. In his view, the warrant was defective, and Farley had no basis to believe the plastic bag contained marijuana. Also, the accused maintains he had a reasonable expectation of privacy for any item he placed in his backyard.

The Government, citing *United States v. Arboleda*, 633 F.2d 985 (2nd Cir. 1980), contends by dropping the bag outside the window, the accused abandoned any reasonable expectation of privacy.

■ The Fourth Amendment does not prohibit all searches and seizures, but only those which are unreasonable. *United States v. Roberts*, 2 M.J. 1 (C.M.A.1971); *United States v. Cruz*, 5 M.J. 286 (A.F.C.M. R.1978). The reasonableness of entry by police officers on private property is measured by the totality of the existing circumstances. *Zeigler v. State*, 402 So.2d 365 (Fla.1981).

■ The threshold inquiry in this Fourth Amendment challenge is whether the accused had a legitimate expectation of privacy in the invaded area. *United States v. Glasgow*, 658 F.2d 1036 (5th Cir. 1981). The expectation of privacy is recognized in

military jurisprudence. E.g., *United States v. Bailey*, 3 M.J. 799 (A.C.M.R.1977). Further, that expectation includes a backyard surrounding a residence. *United States v. Wolfe*, 375 F.Supp. 949 (D.C.Pa.1974); *See generally United States v. Burnside*, 15 U.S. C.M.A. 326, 35 C.M.R. 298 (1965); *contra State v. Davidson*, 44 Wis.2d 177, 170 N.W.2d 755 (1969).

■ The issue posed is, Did Officer Farley act unreasonably, under the unique circumstances of this case, in seizing the plastic bag the accused dropped?

The facts, *sub judice*, resemble closely those presented to the Court of Appeals of New York in *People v. Doerbecker*, 39 N.Y.2d 448, 384 N.Y.S.2d 400, 348 N.E.2d 875 (1976). There a police officer without a warrant went on land adjoining a residence and found a plastic bag containing pills and guns hidden under some leaves. After concluding the officer had made a Fourth Amendment search because he had intruded upon a justified expectation of privacy, the Court stated:

That expectation, however, was only one of the elements to be considered in determining the reasonableness of the search. Also relevant was the relatively limited extent of the intrusion on the privacy when measured against the justification which existed for it. Here, the intrusion was lesser rather than greater, not extending into the primary building at all; at the same time the justification—the preservation of the public safety—was more than adequate. [Citation omitted].

*People v. Doerbecker, supra* 384 N.Y.S.2d at 402, 348 N.E.2d at 877.

cribed in the warrant either in street number or street name. The warrant:
1) Described the premises as a one story wood frame duplex situated in the 300 block of Tarasco;
2) Gave the apartment number as 325 Tarasco;
3) Gave occupants as Billy and Pat Myers; and
4) Identified the contraband to be seized as marijuana.
From the warrant it is apparent that only the residence in the 300 block of Tarasco occupied

by the accused and his wife was to be searched. There was no risk that the executing officers would be misled into making a blanket search or a search of innocent persons not intended by the magistrate to be searched. *United States v. Azelton*, 49 C.M.R. 163 (A.C. M.R.1974) and cases cited therein; *pet. denied*, 49 C.M.R. 889 (C.M.A.1974); *United States v. Gitcho*, 601 F.2d 369 (8th Cir. 1979), *cert. den.*, 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979); *State v. Korman*, 379 So.2d 1061 (La. 1980).

Here also the intrusion on the property was minor and did not extend to the house or any building. A simple trespass without more will not invalidate a subsequent seizure. *United States v. Lewis*, 227 F.Supp. 433 (S.D.N.Y.1964). The Fourth Amendment protects people not places. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The accused's rights under the Fourth Amendment were fully protected. Farley's seizure of the plastic bag was not unreasonable.

Accordingly, the findings of guilty and the sentence are

AFFIRMED.

MILLER, Judge (concurring in the result):

I fully concur with the Chief Judge's rationale in disposing of the *Jencks* issue. Although I also agree with my brothers' result regarding the search question, I do not reach the issues they decide this question upon. Rather, I conclude that based on the facts of this case, the accused did not have the "legitimate expectation of privacy" necessary for him to invoke a Fourth Amendment exclusionary rule.

Under the facts as set forth in the lead opinion, I am convinced that when the accused pitched the bag containing marijuana out of his dwelling window, he did so in an effort to "rid himself" of contraband that he believed would otherwise have been promptly seized from his possession. There is no doubt in my mind, that, rather than consciously attempting to secrete it in an area subject to a legitimate expectation of privacy, he was consciously attempting to place it in an area exposed to the public, so that, if found, he could successfully deny any personal connection with it.

Consequently, the accused had no subjective expectation of privacy in the area in which the marijuana was seized. Regardless of whether or not the military recognizes an objective expectation of privacy in backyards, unless an accused actually has a subjective expectation of privacy in such a backyard, he is not entitled to Fourth Amendment protection against a search for contraband conducted therein. *People v. Reiss*, 129 Cal.App.3d 550, 181 Cal.Rptr. 166 (1982) and *Smith v. Maryland*, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979), *See also, United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); *United States v. Lochan*, 674 F.2d 960 (1st Cir. 1982); *United States v. Bellina*, 665 F.2d 1335 (4th Cir. 1981); *United States v. Arboleda*, 633 F.2d 985 (2nd Cir. 1980); *Raettig v. State*, 406 So.2d 1273 (Fla.App.1981). When, as here, it is a certainty that the accused would have relocated the contraband before the police could obtain a seizure authorization, the police correctly seized the contraband based upon exigent circumstances.

POWELL, Senior Judge (concurring in the result):

I agree with the Chief Judge's disposition of the *Jencks* issue. I, too, conclude that the seizure of the plastic bag containing the marijuana was not unreasonable under the circumstances of this case. I do so, however, because I find that Agent Farley, in jumping the fence and seizing the bag, did little else but what was permissible had the officials executed what I consider to be a valid search warrant issued by a magistrate and supported by probable cause. I do not agree with Judge Miller's conclusion that the accused did not maintain a legitimate expectation of privacy in the plastic bag dropped inside the fenced area of his backyard adjacent to his dwelling. Further, I find the public safety aspect present in the case of *People v. Doerbecker*, 39 N.Y.2d 448, 384 N.Y.S.2d 400, 348 N.E.2d 875 (1976), a significantly distinguishing feature which persuades me against relying upon that decision as authority in the disposition of this case.